## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYUDMILA MANNAPOVA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>P.S.C. COMMUNITY SERVICES, INC.,<br><br>Defendant. | Case No.: 1:18 Civ. 4146<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Lyudmila Mannapova ("Plaintiff") by her attorneys Wittels Law, P.C., Hymowitz Law Group PLLC, and Kheyfits Belenky LLP brings this action individually and on behalf of a class of persons defined below, against Defendant P.S.C. Community Services, Inc., ("Defendant," "P.S.C." or the "Company") and alleges the following with knowledge as to her own acts, and upon information and belief as to all other acts:

### SUMMARY OF THIS CLASS AND COLLECTIVE ACTION
### TO RECOVER FOR DEFENDANT'S WAGE AND HOUR VIOLATIONS

1.      This suit seeks to remedy P.S.C.'s illegal pay practices.  Defendant is a home health care agency whose workers provide home-based aid to individuals in need of medical or other home care assistance.  Plaintiff and the Class are hard-working home health and personal care aides (collectively, "home care workers") employed by P.S.C.

2.      P.S.C. is a sizeable home health company, servicing hundreds of individuals in the New York City metropolitan area.  P.S.C.'s success is attributable to the devoted service of its home care workers.  Nevertheless, although Plaintiff Ms. Mannapova and the Class work more than 40 hours per week to service P.S.C.'s clients, Defendant fails to pay its home care

workers the proper overtime and wage parity compensation they are legally and justly owed.

3. While Defendant's labor practices undoubtedly benefit its bottom line, they are in stark violation of New York State Labor Law ("NYLL" or "N.Y. Labor Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and its supporting regulations.

4. Home care workers perform vitally important work that is physically and psychologically demanding. These workers are crucial for ensuring access to the care that many individuals need to remain healthy and independent, and they should be compensated fairly and, at the very least, in accordance with the law.

5. The home care industry has grown dramatically over the past thirty years as more individuals choose to stay at home rather than seek care in nursing homes. Today, there are approximately 2 million home care workers nationwide supporting their patients' independence. Yet despite the industry's growth, home care workers remain among the lowest paid service industry workers. The average wage for a home care worker in the United States—comprised overwhelmingly of immigrant women and women of color—is less than $20,000 a year. Further, the lack of basic employment protections, including compliance with state and federal wage and hour laws, results in an approximately 50% turnover rate in the home care industry and leaves those who do stay in the industry unable to take care of their own families.

6. Plaintiff Ms. Mannapova brings this action on behalf of herself and all similarly situated employees, both as a class action under Rule 23 of the Federal Rules of Civil Procedure, and as a collective action under the FLSA, 29 U.S.C. § 216(b).

7. Only by joining together in a class and collective action can the Company's employees remedy P.S.C.'s ongoing wrongdoing. Because the monetary damages suffered by each employee are small compared to the much higher cost a single employee would incur in

trying to challenge P.S.C.'s unlawful pay practices, it makes no financial sense for an individual employee to bring her own lawsuit.  Further, many, if not most of Defendant's employees do not realize they are victims of Defendants' wage and hour violations.

8.     With this class action, Plaintiff and the Class seek to level the playing field and ensure that companies like P.S.C. engage in fair and upright business practices.  Plaintiff therefore seeks equitable relief in addition to monetary damages.  Plaintiff also asks that the Court declare Defendant's wage and hour practices impermissible, enjoin Defendant from continuing its abusive labor practices, require that Defendant return all misappropriated monies, and compensate Plaintiff and the Class for all harms they have suffered because of Defendant's unlawful conduct.

## PARTIES

9.     Plaintiff Lyudmila Mannapova is a New York citizen, and at all times relevant to this action resided in Brooklyn, NY.  Plaintiff Mannapova was employed by P.S.C. from around August 2010 until around February 2018.  Plaintiff Mannapova's Consent to Join this Collective Action is attached hereto as Exhibit A.

10.     At all relevant times, Plaintiff Mannapova worked as a home care worker in Brooklyn, frequently working more than 40 hours per week.

11.     Defendant P.S.C. is a New York corporation with its headquarters located at 51-02 21st Street 2nd Floor, Long Island City, NY 11101.  P.S.C. is primarily in the business of placing home health and personal care aides at the homes of patients in New York City with medical and personal care needs.

12.     On information and belief, Defendant P.S.C. is organized as and claims to be a non-for-profit corporation.  On information and belief, P.S.C. has employed home care workers to work 24-hour long shifts.  On information and belief, P.S.C. failed to pay at least the

minimum wage to these workers for these shifts.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1337 and 29 U.S.C. § 216(b) because Plaintiff seeks relief under federal law,

specifically the FLSA, 29 U.S.C. § 201 *et seq*.

14.     This Court has jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. §

1332 (the "Class Action Fairness Act").  This action meets the prerequisites of the Class Action

Fairness Act, because the aggregate claims of the Class exceed the sum or value of $5,000,000,

the Class has more than 100 members, and diversity of citizenship exists between at least one

member of the Class and Defendant.

15.     This Court also possesses supplemental jurisdiction over Plaintiff's NYLL claims

pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy.

16.     This Court has personal jurisdiction over Defendant because it is a New York

corporation headquartered in New York.

17.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides

in the Eastern District of New York and because a substantial part of the events giving rise to

Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

18.     Upon information and belief, P.S.C. was established in 1979.  On information and

belief, the Company's revenues have been well in excess of $500,000 in each year from 2011 to

the present.

19.     P.S.C.'s employees' work also regularly involves them in interstate commerce.

Yet P.S.C. has committed multiple wage and hour violations, which are detailed in the following

paragraphs.

20.     In 2012, Plaintiff Mannapova's regular hourly pay was $10.00, $10.50, $11.10, $11.60, and $11.75 per hour.  When she worked overtime, P.S.C. did not pay Ms. Mannapova any overtime premium.

21.     In 2013, 2014, 2015, and 2016 Plaintiff Mannapova's hourly pay was $10.00 and $11.10 per hour.  Until October 2015, when she worked overtime, P.S.C. did not pay Ms. Mannapova any overtime premium.  On information and belief, starting October 2015, P.S.C. paid Ms. Mannapova for overtime hours at the rate of 1½ times the weighted average of her hourly rates for the first 40 hours of a week.

22.     In 2017, Plaintiff Mannapova's hourly pay was $11.00 and $12.10 per hour.  On information and belief, in 2017, when she worked overtime, P.S.C. paid Ms. Mannapova for the overtime hours at the rate of 1½ times the weighted average of her hourly pay for the first 40 hours of the pay period.

23.     In 2018, Plaintiff Mannapova's hourly rate was $13.00, $13.50, and $14.10 per hour.  On information and belief, in 2017, when she worked overtime, P.S.C. paid Ms. Mannapova for the overtime hours at the rate of 1½ times the weighted average of her hourly rate for the first 40 hours of the pay period.

### A.     Failure to Pay the Entire Earned Compensation Under the Wage Parity Law

24.     As part of its effort to improve the quality of care for New Yorkers who receive home health care services, in 2011, the New York Legislature enacted Public Health Law § 3614-c, which went into effect as of March 1, 2012.  Commonly known as the Wage Parity Law, the statute conditions Medicaid reimbursement for home health care services provided in New York City and the surrounding counties of Westchester, Suffolk, and Nassau upon a home health care agency's certification that its home care workers are paid a statutorily defined minimum wage.  That wage is determined by reference to New York City's Living Wage Law (*see*

Administrative Code of City of NY § 6-109[b][1][a], [b][3]), which sets a minimum wage and health benefits supplement rate that must be paid by any City service contractor or subcontractor to its employees who provide home care services.  By referring to the New York City Living Wage Law, the Wage Parity Law aims to bring total compensation for Medicaid-reimbursed home care aides in the metropolitan New York area into line with compensation paid to aides who are under contract with New York City, thereby furthering the legislative purpose of stabilizing the home care workforce, reducing turnover, and enhancing recruitment and retention of home care workers.

25.     The Wage Parity Law applies to entities like P.S.C. that contract with managed care plans for Medicaid reimbursements. NYPHL § 3614-c(6).  The Wage Parity Law applies "equally to services provided by home care aides who work on episodes of care as direct employees of certified home health agencies, long term home health care programs, or managed care plans, or as employees of licensed home care services agencies, limited licensed home care services agencies, or under any other arrangement."  NYPHL § 3614-c(4).

26.     P.S.C. has been and continues to be a licensed home care services agency.

27.     P.S.C. has entered into agreements with one or more managed care plans.  Under the terms of these agreements, managed care plans reimburse P.S.C. for the services performed by its employees with New York state Medicaid funds.  On information and belief, under the terms of these agreements, P.S.C. was obligated to compensate its home care aides according to the Wage Parity Law.

28.     On information and belief, P.S.C. received reimbursements from managed care plans. These reimbursements were funded, at least in part, by New York state Medicaid funds.

29.     Plaintiff Mannapova was a home care aide as defined by the Wage Parity Law.

30.     On information and belief, P.S.C. received reimbursements funded by New York state Medicaid funds for Plaintiff Mannapova's services from a managed care plan.

31.     The New York State Department of Health periodically publishes official notices of the home care worker wage parity minimum rate of total compensation, which provide the breakdown of total hourly compensation required to be paid to home care workers covered by the Wage Parity Law.  The minimum rates differ depending on the size of the employer and whether the worker worked in or outside New York City.  The minimum rates below reflect Ms. Mannapova's circumstances of being employed by a large employer and working in New York City.

32.     For the period of March 1, 2012 through February 28, 2013, the minimum required rate of home care workers' total compensation was $9.00 per hour plus $1.35 per hour if medical benefits were not provided by employer.

33.     For the period of March 1, 2013 through February 28, 2014, the minimum requried rate of home care workers' total compensation was $9.50 per hour plus $1.43 per hour in wages and/or wages and benefits.

34.     For the period of March 1, 2014 through December 30, 2016 the minimum required rate home care workers' total compensation was $14.09 per hour, consisting of a Base Wage of at least $10.00 per hour, Additional Wages of up to $1.69 per hour, and Supplemental (benefit) Wages of up to $2.40 per hour.

35.     For the period of December 31, 2016 through December 30, 2017 the minimum required rate home care workers' total compensation was $15.09 per hour, consisting of a Base Wage of at least $11.00 per hour, Additional Wages of up to $1.69 per hour, and Supplemental (benefit) Wages of up to $2.40 per hour.

36.     For the period of December 31, 2017 through February 2018 (the end of Ms. Mannapova's employment with P.S.C.), the minimum requried rate home care workers' total compensation was $17.09 per hour, consisting of a Base Wage of at least $13.00 per hour, Additional Wages of up to $1.69 per hour, and Supplemental (benefit) Wages of up to $2.40 per hour.

37.     P.S.C. failed to pay Plaintiff Mannapova the compensation required by the Wage Parity Law.  Ms. Mannapova's pay stubs show that in 2012, 2013, 2014, and 2015 (until October 2015), P.S.C. paid her only hourly rate as set forth above, which was insufficient to fulfill the P.S.C. payment obligations under the Wage Parity Law.  In October–December of 2015 and in all of 2016, 2017, and 2018, PCS failed to pay Ms. Mannapova all additional wages and failed to pay her any supplemental wages, as required under the Wage Parity Law.  Accordingly, P.S.C. failed to pay Plaintiff Mannapova and other members of the Class the total minimum compensation required under the Wage Parity Law.

**B.     Failure to Pay Overtime at the Proper Rate**

38.     Under the FLSA, the "'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee . . . ." 29 U.S.C. § 207(e).  The Wage Parity Law supplemental and additional wages are renumeration for employment that was requried to be paid to eligible employees.  Under the NYLL, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended . . . ."  12 N.Y.C.R.R. § 142-2.2.  The total minimum compensation required under the Wage Parity Law is the "regular rate" under both the FLSA and NYLL for eligible home care workers like Ms. Mannapova.

39.     During her tenure with P.S.C., Plaintiff Mannapova worked more than 40 hours per week.  Ms. Mannapova's payroll account records confirm the hours she devoted to Defendant's clients.

40.     For example, during the week of March 15, 2014 to March 21, 2014, Ms. Mannapova's pay stubs demonstrate that she worked 56 hours, yet was underpaid for 16 overtime hours, receiving from Defendant only $10.00 per overtime hour instead of 1½  times the rate mandated by the Wage Parity Law, i.e., $21.14 per overtime hour (1½ x $14.09).

41.     Under the applicable NYLL regulations, 12 N.Y.C.R.R. § 142-2.2, prior to January 1, 2015, to the extent the FLSA overtime exemption applied to Ms. Mannapova, P.S.C. was required to pay her and all other members of the Class at least one and a half times the basic minimum hourly rate for each hour worked in excess of 40 hours per week.  For a given period, the regular rate was mandated by the Wage Parity Law.  For the week discussed in the paragraph above (March 15, 2014 to March 21, 2014) the overtime rate required by New York Law was $21.14 (1½ x $14.09, the minimum rate under the Wage Parity Law).  Even if only the basic minimum hourly rate is considered: Ms. Mannapova's regular rate (i.e., the $10.00 base hourly rate under the Wage Parity Law in 2014), P.S.C. had to pay Ms. Mannapova $15.00 (1½ x $10.00) per overtime hour.  And even if the basic New York minimum wage is considered $8.75 (New York minimum wage during 2014), P.S.C. had to pay Ms. Mannapova $12.00 (1½ x $8.00) per overtime hour.

42.     Defendant P.S.C. paid Plaintiff Mannapova for overtime worked at her regular rate, thus failing to pay one and a half times the regular rate.

43.     Under the applicable FLSA regulations, 29 C.F.R. Part 552, starting on January 1, 2015, P.S.C. was required to pay Ms. Mannapova and all other members of the Class at one and

a half times their regular hourly rate, for each overtime hour worked in excess of 40 hours worked during a week.

44.     From January 1, 2015 until October 17, 2015, P.S.C. failed to pay an overtime premium of one and a half times the regular hourly rate for any overtime hours.

45.     For example, during the week of July 11, 2015 to July 17, 2015, Ms. Mannapova's pay stubs demonstrate that she worked 47 hours, yet was underpaid for the 7 overtime hours, receiving from Defendant only $10.00 per hour instead of 1½ times the regular rate mandated by state and federal law.

46.     P.S.C. also failed to pay members of the Class the required New York and/or FLSA overtime premium due to a uniform company policy of misclassifying certain hours worked as straight time only.  For example, for the week beginning June 11, 2016 and ending June 18, 2016 Plaintiff worked 40 straight time hours and then spent six hours in "in service" training but was not paid an overtime premium for this time.  Instead, the company paid Ms. Mannapova only $10.00 per hour for these six "in service" hours.

47.     The overtime violations detailed above are evident from the payroll account records in both Ms. Mannapova's and Defendant P.S.C.'s possession.

48.     Defendant's failure to pay Plaintiff the proper overtime compensation required by the FLSA and NYLL was willful because it knew about or showed reckless disregard for its failure to compensate its employees at an overtime rate required by these statutes.  Defendant's unlawful conduct occurred pursuant to a company policy and/or practice of minimizing labor costs by denying Plaintiff and the Class compensation in violation of the FLSA and NYLL.

**C.     Failure to Compensate for All Hours Worked**

49.     Plaintiff Mannapova regularly served two clients on the same day.  During some weeks, P.S.C. failed to pay her for the travel time between the two clients.  For example, on May

25, 2017, Ms. Mannapova served one client for 12 hours and another client for 9.25 hours.  It took Ms. Mannapova approximately 30 minutes to travel between the residences of these two clients, but she received no compensation for that travel time.

50.     During other weeks, P.S.C. paid *some* of Ms. Mannapova's travel time between her clients but failed to compensate her for the full time travelled.  For example, on May 11, 2016, Ms. Mannapova served one client for 12 hours and another for 11 hours.  On May 12, 2016, Ms. Mannapova served one client for 10.25 hours and another for 12 hours.  On each day tt took Ms. Mannapova approximately 30 minutes to travel between these two clients.  The pay stub for this week, however, shows only 0.5 hours of travel time on May 9, 2016, a day when Ms. Mannapova did not travel between clients.  Worse, P.S.C. paid the 0.5 hours of travel time at the rate of $9.00 hours per hour, not her regular rate of $10.00 per hour.

51.     Under the applicable FLSA regulations, 29 C.F.R. § 785.38 and 29 C.F.R. Part 552, and NYLL regulations, 12 N.Y.C.R.R. § 142-2.2, starting on January 1, 2015, P.S.C. was required to pay all members of the Class for the travel time between two clients served on the same day.

52.     To the extent such travel time was overtime, i.e., hours worked in excess of 40 hours per week, P.S.C. failed to compensate the Class for such travel time at the required overtime rate.

53.     To the extent such travel time was straight time, P.S.C. failed to compensate Ms. Mannapova and the Class for such travel time at the regular pay rate as required under the Wage Parity Law.

**D.     Denial of "Spread of Hours" Pay for Time Worked in Excess of 10 Hours**

54.     At all times, for certain hours, Plaintiff Mannapova's regular hourly wage was the minimum required under the New York Wage Parity Law, N.Y. Pub. Health Law § 3614-c.

55.     Pursuant to 12 N.Y.C.R.R. § 142-2.4 Defendant is required under New York law to pay Plaintiff and the Class an extra hour's pay for split shifts or any time worked in excess of the 10-hour shift.  This required extra pay is called "spread of hours" pay.

56.     Plaintiff Mannapova and the Class regularly worked more than ten hours per day. For example, during the week from December 20–26, 2013 Plaintiff Mannapova worked at least three shifts that were longer than 10 hours, receiving $10.00 per hour for two of such shifts, but was not paid the spread of hours pay.

57.     Defendant failed and continues to fail to provide spread of hours pay to its employees when they work more than ten hours per day.

58.     The spread of hours violations detailed above are evident from both the payroll account records in Ms. Mannapova's and Defendant P.S.C.'s possession.

**E.      Wage Theft Prevention Act Violations**

59.     Defendant failed to provide Plaintiff and the Class with accurate wage statements, which is required by NYLL § 195(3).  For example, Ms. Mannapova's wage statements did not reflect the correct overtime rate or rates of pay, and the number of regular and overtime hours worked.  Ms. Mannapova's wage statements also regularly did not itemize the actual hours worked during a pay period, instead reflecting those hours on later wage statements.  Further, Ms. Mannapova's wage statements did not reflect any compensation required by New York's Wage Parity Law, such as additional and supplemental wages.  Ms. Mannapova's wage statements also frequently failed to reflect travel time, miscalculated the travel time, or attributed it to the wrong day.

60.     Defendant also failed to furnish Plaintiff and the Class with an accurate annual wage notice as required by NYLL § 195(1).

F.      **Failure to Pay Wages Promptly**

61.     Plaintiff Mannapova and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).  They spend well in excess of 25% of their working time performing physical labor.

62.     NYLL § 191(1)(a)(i) requires that Plaintiff and the Class be paid weekly and that wages be paid with no more than a 7-day lag—i.e., not later than seven calendar days after the end of the week in which the wages are earned.

63.     The FLSA requires that wages be promptly paid and that they not be unreasonably delayed.

64.     Defendant failed to pay earned compensation to Plaintiff and the Class with the frequency and timeliness required by NYLL § 191(1)(a)(i).

65.     Defendant delayed payment longer than is reasonable under the FLSA.

66.     During the period of February 2, 2013 – March 21, 2014, the Company's uniform payroll practice was to pay its employees like Plaintiff Mannapova every other Friday.  On each payday Plaintiff was given two paychecks, with each check covering one of the weeks in a two week pay period.  The checks, however, were lagged by 7 days—on any given Friday one check was for work performed in the week prior to the one that was just ending, and the other check covered the week that had ended 14 days before payday.  P.S.C. thus made Plaintiff and the Class wait 14 days for the first week's paycheck.

67.     During periods of January 2012 – February 1, 2013, March 22, 2014 – February 2018 (the end of Ms. Mannapova's employment with P.S.C.), P.S.C.'s uniform payroll practice was to pay its employees like Plaintiff Mannapova every other Friday.  On each payday, Plaintiff was provided with a single paycheck that covered a two-week pay period, but P.S.C. lagged the checks by 7 days, which meant that payment for the first week of the two-week period of work

was delayed by 14 days.

68.     In addition, on multiple occasions, P.S.C. delayed payment for certain days by weeks or even months.  For example, P.S.C. waited until June 2, 2017 to pay Ms. Mannapova for the work she performed on May 10, 2017.  In another instance P.S.C. paid Plaintiff for her September 20, 2017 work on October 20, 2017.

69.     Defendant's failure to promptly pay Plaintiff and the Class was willful, unreasonable, and upon information and belief was motivated by illegitimate business purposes, including P.S.C.'s desire to hold on to its employees' wages for a longer period of time instead of paying with reasonable promptness.

**G.     Improper Deductions under the NYLL § 193**

70.     In 2014, Defendant deducted the total of $40 in four $10 deductions from Ms. Mannapova's pay for "Political Action."  The Political Action deduction was in addition to the Union Dues deductions.

71.     The "Political Actions" deductions were in violation of NYLL § 193 because Ms. Mannapova has not expressly authorized the "Political Action" deductions in writing and these deductions were not for the benefit of Ms. Mannapova.

**COLLECTIVE ACTION ALLEGATIONS**

72.     Plaintiff brings Counts I–III under the FLSA on behalf of herself and all other similarly situated current and former home health and personal care aides (collectively "home care workers") employed by Defendant at any time within the three years prior to the date of the filing of this action and thereafter (the "FLSA Collective").

73.     At all relevant times, Plaintiff and the FLSA Collective are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan, and common programs, practices,

procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff one and-one-half times their regular rates work in excess of 40 hours per workweek.

74.     Defendant's unlawful conduct, as described in this Class and Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs.

75.     Defendant is aware or should have been aware that as of January 1, 2015 federal law requires it to pay home care workers an overtime premium for hours worked in excess of 40 per workweek.

76.     Counts I–III are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

77.     The members of the FLSA Collective are readily ascertainable, can be located through Defendant's records, and would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join the lawsuit.

78.     Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings Counts IV–XII pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a Class of P.S.C. employees preliminarily defined as follows:

> All persons who were employed by P.S.C. as home care workers who, at any time within six years prior to the date of the filing of this action and thereafter, did not receive full compensation for all overtime and straight hours worked.

80.     Excluded from the Class are Defendant, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in P.S.C.; and the Judge(s) to whom this case is assigned, their judicial staffs, and any member of the Judge(s)' immediate family.

81.     The claims of Plaintiff and the Class may properly be maintained as a class action against Defendant pursuant to the provisions of Federal Rule of Civil Procedure 23.

82.     The size of the Class is more than 100 individuals.  The persons in the Class are so numerous that the joinder of all such persons is impracticable.

83.     Plaintiff is a member of the Class.  Her claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.  All members of the Class have been subject to and affected by the same or similar conduct.

84.     Plaintiff will fairly and adequately protect the interests of all Class members because it is in her best interest to vigorously prosecute the claims alleged herein and to obtain full compensation due to her for the illegal conduct of which she complains.  Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

85.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a.  Whether Defendant failed to pay its employees all overtime compensation earned in violation of N.Y. Labor Law §§ 650 *et seq*. and 12 N.Y.C.R.R. § 142-2.2;

b.  Whether Defendant failed to pay its employees all compensation for straight time earned in violation of N.Y. Labor Law §§ 198 *et seq*.;

c.  Whether Defendant failed to pay its employees in a timely manner and with the required frequency in violation of N.Y. Labor Law § 191(1)(a)(i);

d.  Whether Defendant should compensate its employees for an extra hour of pay for all days when they worked more than 10 hours or worked split shifts as required by New York's spread-of-hours law;

e.  Whether Defendant failed to furnish the Class with an accurate annual wage notice, as required by NYLL § 195(1);

f.  Whether Defendant failed to furnish the Class with accurate wage statements, as

required by NYLL § 195(3);

g. Whether Defendant made illegal deductions from the Class's wages in violation of NYLL § 193(1);

h. Whether Defendant failed to pay its employees all Wage Parity Act minimum wages in violation of Public Health Law § 3614-c and NYLL §§ 198, 663(1);

i. Whether, and to what extent, equitable relief should be imposed on Defendant to prevent the Company from continuing its unlawful labor policies; and

j. The extent of class-wide injury and the measure of damages for those injuries.

86.    A class action is superior to all other available methods for resolving this controversy because i) the prosecution of separate actions by Class members will create a risk of adjudications with respect to individual Class members that will, as a practical matter, be dispositive of the interests of the other Class members not parties to this action, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class members will create a risk of inconsistent or varying adjudications with respect to individual Class members, which will establish incompatible standards for Defendant's conduct; iii) Defendant has acted or refused to act on grounds generally applicable to all Class members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

87.    Accordingly, this action satisfies the requirements set forth under Fed. R. Civ. P. 23(a) and 23(b).

## COUNT I
### (FLSA – Unpaid Overtime Wages)

88.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.    At all relevant times, Plaintiff and the FLSA Collective were employed by an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

90.     At all relevant times, Plaintiff and the FLSA Collective were employees of Defendant within the meaning of 29 U.S.C. § 203(e).

91.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, 29 C.F.R. Part 552 effective as of January 1, 2015, apply to Defendant P.S.C. and protect Plaintiff and the FLSA Collective.

92.     The FLSA 29 U.S.C. § 206 and §207 mandate that in calculating overtime the employer must utilize the employees' regular rate of pay.

93.     In violation of the FLSA and supporting regulations, P.S.C. has engaged in a widespread pattern, policy, and practice of failing to pay Plaintiff and the FLSA Collective overtime wages at time-and-a-half their regular rate of pay for all hours that they worked over 40 hours in a workweek.

94.     As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## <u>COUNT II</u>
**(FLSA – Failure to Pay for Travel Time Between Clients)**

95.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96.     The FLSA's wage provisions, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, 29 C.F.R. § 785.38 and 29 C.F.R. Part 552 effective as of January 1, 2015, require P.S.C. to compensate Plaintiff and the FLSA Collective for the time spent traveling between clients served on the same day.

97.     To the extent such travel time is overtime, P.S.C. failed to compensate Plaintiff

and the FLSA Collective at the rate of 1½ times the regular rate.

98.     To the extent such travel time is straight time, P.S.C. failed to compensate Plaintiff and the FLSA Collective at the FLSA minimum wage of $7.25 per hour.

99.     Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and the FLSA Collective, including hours worked each workday and total hours worked each workweek.

100.    As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## COUNT III
### (FLSA – Failure to Pay Wages Promptly)

101.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

102.    The FLSA mandates that wages be promptly paid and that they not be unreasonably delayed.

103.    In violation of the FLSA, P.S.C. has engaged in a widespread pattern, policy, and practice of failing to promptly pay Plaintiff and the FLSA Collective.

104.    Defendant's unlawful conduct has been willful and intentional.  Defendant was aware or should have been aware that its practices with respect to the compensation of Plaintiff and the FLSA Collective are unlawful.  Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

105.    Defendant has not made a good faith effort to comply with the FLSA's prompt payment requirement.

106.    As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## COUNT IV
### (NYLL – Unpaid Overtime Wages)

107.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

108.    The overtime wage provisions of Article 19 of the N.Y. Labor Law and its supporting regulations apply to Defendant and protect Plaintiff and the Class.

109.    In violation of N.Y. Labor Law applicable regulations, P.S.C. has engaged in a widespread pattern and practice of failing to pay its employees overtime compensation.

110.    By Defendant's knowing or intentional failure to pay Plaintiff and the Class the correct overtime rate, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

111.    Due to Defendant's willful violations, Plaintiff and the Class are entitled to recover from Defendant their unpaid overtime wages earned and due during the six years prior to the commencement of this action and thereafter, as well as liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 663.

## COUNT V
### (NYLL – Failure to Pay For Travel Time Between Clients)

112.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113.    The overtime wage provisions of Article 19 of the N.Y. Labor Law and its

supporting regulations apply to Defendant and protect Plaintiff and the Class.

114.    The provisions of Article 6 of the N.Y. Labor Law requiring employers to pay all earned wages apply to Defendant and protect Plaintiff and the Class.

115.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, 29 C.F.R. Part 552 effective as of January 1, 2015, require P.S.C. to compensate Plaintiff and the Class for the time spent traveling between clients served on the same day.

116.    Accordingly, under the NYLL and supporting regulations, 12 N.Y.C.R.R. § 142, effective January 1, 2015 travel time between two clients became compensable and to the extent such travel time was overtime, Plaintiff and the Class were entitled to the overtime premium of 1½ times the regular rate, which P.S.C. failed to pay.

117.    To the extent such travel time was straight time, P.S.C. failed to compensate Plaintiff and the Class at the applicable regular hourly rate.

118.    By Defendant's knowing or intentional failure to pay Plaintiff and the Class for the travel time between two clients during a single shift, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations and/or N.Y. Labor Law Art. 6, §§ 190 *et seq.*

119.    Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and the Class, including hours worked each workday and total hours worked each workweek, as required by N.Y. Labor Law § 195(4) and supporting regulations.

120.    Due to Defendant's willful violations, Plaintiff and the Class are entitled to recover from Defendant their unpaid overtime or regular wages earned and due during the six years prior to the commencement of this action and thereafter, as well as liquidated damages,

reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law §§ 663, 198.

### COUNT VI
### (NYLL – Violations Related to Timeliness and Frequency of Pay)

121.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.    Plaintiff and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).

123.    Defendant willfully failed to pay Plaintiff and the Class earned compensation in a timely manner and with the required frequency in violation of NYLL § 191(1)(a)(i).

124.    Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant damages for late payments of wages in the amount of liquidated damages equal to one hundred percent of all late payments, as well as reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 198.

### COUNT VII
### (NYLL – Spread-Of-Hours Pay)

125.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.    Under 12 N.Y.C.R.R. § 142-2.4, P.S.C. is required to pay an hourly employee an extra hour of pay for any split-shift or day in which the employee's "spread of hours" exceeds 10 hours.  The relevant spread is the time between the beginning and the end of employee's work day including all working time, time off for meals, and time off duty, as defined by 12 N.Y.C.R.R. § 142-2.18.

127.    Plaintiff and the Class often work a spread of hours in excess of 10 hours per day

or split shifts.  However, Defendant never pays these employees an extra hour of pay for each day in which they worked over 10 hours or a split shift.  Defendant continually violates 12 N.Y.C.R.R. § 142-2.4.

128.    By Defendant's knowing or intentional failure to pay Plaintiff and the Class spread-of-hours pay, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 650 *et seq*., and the supporting New York State Department of Labor regulations.

129.    Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

<u>**COUNT VIII**</u>
**(NYLL – Failure to Provide Annual Wage Notices)**

130.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

131.    P.S.C. willfully failed to provide Plaintiff and the Class with wage notices, as required by N.Y. Labor Law § 195(1).

132.    Through its knowing or intentional failure to provide Plaintiff and the Class with the wage notices required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

133.    Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to statutory penalties of $50 for each workday that Defendant failed to provide them with wage notices, or up to a total of $5,000, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

## COUNT IX
### (NYLL – Failure to Provide Accurate Wage Statements)

134.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

135.    P.S.C. willfully failed to provide Plaintiff and the Class with accurate statements of wages, as required by N.Y. Labor Law § 195(3) by, among others, omitting the work time spent traveling between clients on the same day, omitting hours worked during the pay period, and listing the incorrect regular and overtime rate.

136.    Through its knowing or intentional failure to provide Plaintiff and the Class with the accurate wage statements required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

137.    Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff and the Class are entitled to statutory penalties of $250 for each workweek that Defendant failed to provide them with accurate wage statements, or a total of up to $5,000, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## COUNT X
### (NYLL – Illegal Wage Deductions)

138.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

139.    P.S.C. willfully deducted money for "Political Action" from Plaintiff's and the Class members' wages.  The "Political Action" deduction was applied to Plaintiff's and Class members' wages without their prior written authorization and was not made for their benefit in violation of N.Y. Labor Law § 193(1).

140.    Due to Defendant's willful violations of NYLL, Article 6, § 193, Plaintiff and the

24

Class are entitled to recover from Defendant the deductions illegally withheld from their wages during the six years previous to commencing this action and thereafter, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT XI
### (NYLL – Failure to Pay Earned Wages Mandated By The Wage Parity Law)

141.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

142.     New York Labor Law § 190(1) defines "Wages" as "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis.  The term "'wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."

143.     New York Labor Law § 198-c(2) further provides: "As used in this section, the term 'benefits or wage supplements' includes, but is not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."

144.     Pursuant to New York Labor Law § 198 employers such as the Defendant who fail to pay hourly employees wages in conformance with New York Labor Law shall be liable to the hourly employees for the wages that were not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

145.     The Total Compensation for home care workers as mandated by Wage Parity Law is wages under New York Labor Law.

146.     During the period of Ms. Mannapova's employment with P.S.C., under the Wage Parity Law, Defendant was obligated to pay its home care worker employees the total compensation as set forth in ¶¶ 32–36 because it entered into agreements with managed care

plans and was receiving reimbursements funded by the New York Medicaid program.

147.    Plaintiff and the Class were entitled to receive the total compensation of as set forth above per hour under the Wage Parity Law.

148.    Defendant never paid Plaintiff and the Class the Total Compensation as required by the Wage Parity Law.

149.    Defendant's failure to pay Plaintiff and the Class the total compensation as required by the Wage Parity Law was without good faith basis to believe that such failure was in compliance with the law.

150.    Due to Defendant's violations of the Wage Parity Law and N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT XII
**(Unjust Enrichment – In The Alternative)**

151.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

152.    If Plaintiff's and the Class's New York Labor Law claim for wages required by the Wage Parity Law fails for any reason, Defendant was unjustly enriched by failing to pay Plaintiff and the Class the total compensation required by the Wage Parity Law.

153.    Defendant was enriched by keeping the underpayment, which is the difference between what it should have paid under the Wage Parity Law and what it actually paid to the Plaintiff and the Class.

154.    By keeping the underpayment, Defendant was enriched at Plaintiff's and the Class members' expense.

155.    The circumstances of the enrichment are such that equity and good conscience require restitution to which Plaintiff and the Class are entitled.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lyudmila Mannapova on her own behalf and on behalf of all other similarly situated persons, seeks the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA and state law claims;

B.    Designation of Plaintiff as the Representative of the FLSA Collective;

C.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201, *et seq.*;

D.    An award of damages, according to proof, including liquidated damages, to be paid by Defendant, as authorized by the FLSA;

E.    Certification of this case as a class action pursuant to Rule 23;

F.    Designation of Plaintiff as the Representative of the Class and counsel of record as Class Counsel;

G.    Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the NYLL, Article 6, §§ 190, *et seq.*, NYLL, Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations;

H.    An award of unpaid straight time pay, overtime pay, spread of hours pay, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

I.    Statutory penalties of $50 for each workday that Defendant failed to provide the Plaintiff

and the Class with a wage notice, or a total of $5,000, as provided for by the NYLL, Article 6 §

198;

J.       Statutory penalties of $250 for each workweek that Defendant failed to provide Plaintiff

and the Class with accurate wage statements, or a total of $5,000, as provided for by the NYLL,

Article 6 § 198;

K.       Pre-judgment interest and post-judgment interest;

L.       Issuance of an injunction requiring Defendant to pay all statutorily required wages

pursuant to the N.Y. Labor Law and an order enjoining Defendant from continuing its unlawful

policies and practices as described herein with respect to the Class and Collective;

M.       Punitive damages;

N.       Penalties, as provided by law;

O.       Reasonable attorneys' fees and costs of the action; and

P.       Such other relief as this Court shall deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Mannapova

requests trial by jury in this action of all issues so triable.

Dated:  Armonk, New York
       July 20, 2018

By:     /s/ Steven L. Wittels
          Steven L. Wittels (SW-8110)
          J. Burkett McInturff (JM-4564)
          Tiasha Palikovic (TP-5697)
          Sharon Samuel Ourien (SO-0215)
          WITTELS LAW, P.C.
          18 HALF MILE ROAD
          ARMONK, NEW YORK 10504
          Telephone: (914) 319-9945
          Facsimile: (914) 273-2563
          slw@wittelslaw.com
          jbm@wittelslaw.com
          tpalikovic@wittelslaw.com
          sso@wittelslaw.com

          *Lead Counsel for Plaintiff and the Class*

          Daniel Hymowitz (DH-0936)
          HYMOWITZ LAW GROUP, PLLC
          1629 Sheepshead Bay Road
          Brooklyn, NY 11235
          Telephone: (718) 807-9900
          Facsimile: (866) 521-6040
          daniel@hymowitzlaw.com

          Andrey Belenky (AB-1976)
          Dmitry Kheyfits (DK-9799)
          KHEYFITS BELENKY LLP
          1140 Avenue of the Americas, 9th Floor
          New York, NY 10036
          Phone: (212) 203-5399
          Facsimile: (212) 203-6445
          abelenky@kblit.com
          dkheyfits@kblit.com

          *Co-Counsel for Plaintiff and the Class*