UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
LYUDMILA MANNAPOVA,
individually and on behalf of all others
similarly situated,

        Plaintiff,

-against-

P.S.C. COMMUNITY SERVICES,
INC.,

        Defendant.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 18-CV-4146 (FB) (PK)

*Appearances:*

*For the Plaintiff:*
STEVEN L. WITTELS
J. BURKETT McINTURFF
TIASHA PALIKOVIC
Wittels Law, P.C.
18 Half Mile Road
Armonk, New York 10504

ANDREY BELENKY
DMITRY KHEYFITS
Kheyfits Belenky LLP
1140 Avenue of the Americas, 9th Floor
New York, New York 10036

*For the Defendant:*
MICHAEL P. COLLINS
Bond Schoeneck & King PLLC
600 Third Avenue, 22nd Floor
New York, New York 10016

*For Amicus Curiae:*
LAUREVE D. BLACKSTONE
Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, New York 10011

**BLOCK, Senior District Judge:**

      The plaintiff in this putative class action, Lyudmila Mannapova, is a home health aide formerly employed by P.S.C. Community Services, Inc. She brings claims for underpayment of wages under the federal Fair Labor Standards Act and the New York Labor Law.

P.S.C. moves to compel arbitration pursuant to a provision of its 2016 collective bargaining agreement ("CBA") with a union, 1199 SEIU United Healthcare Workers East ("1199-SEIU"), of which Mannapova was a member.[1] 1199-SEIU, which is pursuing arbitration of wage and hour claims on behalf of some 130,000 of its current and former members, has filed an amicus brief supporting P.S.C.'s motion to compel arbitration.

When the parties first appeared at an informal conference to discuss P.S.C.'s motion, their principal dispute was whether the arbitration provision in the CBA was mandatory or permissive. That issue has now been resolved by the Second Circuit, which held in *Abdullayeva v. Attending Homecare Services, LLC*, 928 F.3d 218 (2d Cir. 2019), that "the Union agreed to mandatory arbitration in the CBA on behalf of its members and that the arbitration agreement at issue clearly and unmistakably encompasses [the plaintiff's] FLSA and NYLL claims." *Id.* at 223. Although it involved different parties, *Abdullayeva* addressed an arbitration provision identical (except for the name of the arbitrator) to the provision between P.S.C. and 1199-SEIU.

Mannapova acknowledges *Abdulleyeva*—as she must—but she advances

---

[1] To be precise, the 2016 CBA consists of memoranda of understanding consolidating and amending various preexisting CBAs. The arbitration provision was included in a memorandum of understanding executed by P.S.C. and the union in January 2016.

several other reasons why her claims are not subject to arbitration. The Court addresses those arguments in turn.

1.  Mannapova argues that the CBA was never ratified by P.S.C.'s Board of Directors or by 1199-SEIU's membership. But the union itself takes the position that the CBA was binding on its members. "[A] union may contract the employee's terms and conditions of employment and provisions for processing his grievance. . . . The employee may disagree with many of the union decisions but is bound by them." *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967). Moreover, both P.S.C. and SEIU performed as if the CBA were effective, and performance is evidence of a binding contract. *See, e.g.*, *Brown v. C. Volante Corp.*, 194 F.3d 351, 354-55 (2d Cir. 1999) (calling payment of union wages and contributions to welfare funds "sufficient, absent contrary evidence, to establish as a matter of law [employer's] intent to adopt the two unsigned CBAs").

2.  Mannapova, who began working for P.S.C. in 2010, argues that the arbitration provision does not cover claims arising before the CBA took effect in 2016. The Second Circuit has held that a broad arbitration provision with no temporal limitation may encompass preexisting claims. *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 98, 99 (2d Cir. 1999) (citing *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972)); *see also Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011)

3

("Nothing in the arbitration provision places a temporal limitation on arbitrability."). The arbitration provision here provides that

> all claims brought by the either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA") . . . or New York Labor Law . . . , in any manner, shall be subject exclusively to the grievance and arbitration procedures described in this Article.

Decl. of Christopher Olechowski (Oct. 3, 2019), Ex. D (2016 CBA Art. "Alternative Dispute Resolution" § 1). Such language "unequivocally encompasses" Mannapova's claims. *Abdullayeva*, 928 F.3d at 225. There being no "temporal limitation," it also includes her claims predating the CBA. *Accord Lai-Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) (interpreting same arbitration provision).

3. Conversely, Mannapova argues that the CBA expired before she left P.S.C. It is true that the CBA contains an expiration date of March 31, 2017, and that Mannapova's last day of work was February 17, 2018.[2] It is also true that "an arbitration clause does not . . . continue in effect after expiration of a collective-bargaining agreement." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200 (1991). But P.S.C. and 1199-SEIU executed a "Contract Extension Agreement" in

---

[2]Although the record is clear that Mannapova's employment ended on February 17, 2018, there is some dispute as to whether she remained a union member after that date. The Court need not resolve that dispute.

August of 2018. As its name suggests, the agreement extended the original CBA pending negotiation of a new one. While Mannapova argues that the union no longer had the authority to bind her when the Contract Extension Agreement was executed, P.S.C. and 1199-SEIU agree that they intended to keep the existing CBA in place past its stated expiration date. Their continued compliance with the terms of the CBA after March 31, 2017, is consistent with that intent. "General principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive." *Luden's Inc. v. Local Union No. 6 of Bakery, Confectionary and Tobacco Workers' Int'l*, 28 F.3d 347, 355-56 (3d Cir. 1994) (citing 2 *Corbin on Contracts* § 504 (1963)).

   4. Finally, Mannapova argues that the Labor Management Reporting and Disclosure Act of 1959 invalidates the arbitration provision because it states, *inter alia*, that "no labor organization shall limit the right of any member thereof to institute an action in any court." 29 U.S.C. § 411(a)(4). That argument runs up against 60 years of precedent endorsing arbitration in CBAs. *See, e.g.*, *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960)

("[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) ("This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." (quoting *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998)). If Mannapova is correct that that precedent is contrary to the statute, it will take a higher authority than this Court to resolve the conflict.

For the foregoing reasons, P.S.C.'s motion to compel arbitration is granted.

**SO ORDERED.**

                                                 /S/ Frederic Block
                                                FREDERIC BLOCK
                                                Senior United States District Judge

Brooklyn, New York
August 3, 2020